Yes, Your Honor. Good morning, and may it please the Court. Amanda Bonn, representing appellants, Dan and Jeannie Oliver, et al. Judge Ezra, you asked the question, what was the district court up to? And I think No, that was Judge Paez. Excuse me, Judge Paez. I'm a district judge. I'm very careful. I apologize. In any event, I think in our case, it's easy to sort of zero in on exactly what the district court was up to if we turn to page 5. That sounds like kind of a nefarious, nefarious problem. Page 5. I probably shouldn't have used that. Parking back to my days on the district court. Absolutely. If we turn to pages 5 and 6 of the district court's opinion below, it's at ER-6. The district court explained very clearly what it believed to be the rule that applied to the limitations period for our indirect purchaser suit, and I submit that that interpretation of the law was erroneous. The district court said, The statute of limitations on a continuing violation theory runs from the time of the last overt act made by the defendant, not from the last purchase made by a potential plaintiff. Should the court find otherwise, there would essentially be no statute of limitations barred to indirect purchaser claims. And then the district court cites the Aretha Treatise and says, As the Aretha Treatise explains, if merely charging a monopoly price constitutes a continuing violation, tolling the statute, then we have indefinitely lengthened the statute of limitations. And he cites Aretha at page 286. But if we actually look at what Aretha says at page 286 of the treatise, it explains exactly why, if the Samsung case here is the easy case, as Ms. Sullivan explained earlier, the consumer case that we have presented is even easier. When you turn to page 286 of the Aretha Treatise, what it actually says is, consider a firm that creates a monopoly by the single unlawful act of filing an improper patent infringement suit, and then charges a monopoly price for the indefinite future. If the mere charging of a monopoly price constitutes a continuing violation tolling the statute, then we have indefinitely lengthened the statute of limitations claims of successful monopolization. But then Aretha goes on to say, at the same time, we might want to distinguish an antitrust lawsuit brought by a consumer, and challenging the same wrongfully brought infringement suit, the filing of the lawsuit very likely causes the consumer no injury at all. Rather, the consumer injury occurs when the improper infringement action succeeds in strengthening or lengthening the antitrust defendant's monopoly, thus forcing the consumer to pay more. Now, there's been extensive briefing on the limitations issue in this case. But one thing that defendants have never done is identify any injury whatsoever that the plaintiffs in our case suffered before they actually went out and purchased their SD cards. So when did you allege that that occurred? So our complaint alleges that Dan and Jeannie Oliver, for example, purchased their SD cards after March of 2007, within the four years preceding the filing of this complaint. And so, too, do we allege that every single other indirect purchaser that, number one, is named in the complaint, and number two, that we are seeking to represent in our putative class action are folks who bought their SD cards not 6 years ago or 7 years ago or back in 2003, but rather within the 4-year period. So your claim basically is that the Court erred because under the Sherman Act, your cause of action would have expired prior to you being in a position to even allege one. Absolutely. And if you look at the Zenith v. Hazeltine case from the Supreme Court, along with the Clair case, they talk about the sort of classic continuing violation being a price-fixing conspiracy, where each new sale triggers a new violations period. And certainly in the Zenith case, what the Court said, and I think this mirrors what happened in the Ninth Circuit decision in Pace, if you had a situation where a plaintiff was first injured outside of the limitations period, say 5 years ago or 6 or 20, and at that time it knew it was injured, it could have filed a suit reasonably estimating lost profits or damages it may have suffered into the future, but it has to do it then. It can't simply wait and say, oh, well, down the road I had further injuries. But the test is, when did the injury happen? And in our case, defendants have absolutely no argument that any of the plaintiffs in this case are complaining of an injury that first happened outside the limitations period. We simply don't allege that. And that's why I think it's a crucial point that Judge Gould, I believe, pointed out earlier, which is, according to defendant's rule, members of a cartel could reach an agreement to fix prices, and essentially there's a 4-year period in which consumers could bring a lawsuit, and after that 4-year period is over, time's up. It's like a statute of repose, and they continue to indefinitely fix prices into the future with no remedy and no private attorney general function that the Sherman and Clayton Acts were meant to provide. And that's exactly what the defendant's rule would suggest. There's been the suggestion that defendants have made and the district court suggested below that the opposite is true, that if you allow folks to bring claims within 4 years, then there's sort of never-ending liability. But that's not the case either. In this case, we're not seeking to bootstrap in plaintiffs who purchased first-generation SD cards 10 years ago or 7 or 6. We're only suing on behalf of folks who purchased within 4 years preceding the complaint. And I think, you know, the other issue that came up during Mr. Kessler's argument was regarding really a merits issue about this patent pooling arrangement, and are you really just challenging some patent pooling activity that happened, you know, 10 years ago. And the point is, that may be their gloss on the complaint, but reading the factual allegations in our complaint taken in the light most favorable to the plaintiffs, that is not where our complaint begins and ends. Our complaint alleges a scheme that the defendants concocted, perhaps beginning in 1999, but certainly continuing into the present with new features, new meetings, new overt acts, with the purpose and effect of constraining price competition in the SD card market. And, you know, I think there's an analogy that was raised about a toll booth. And, you know, if we've got a toll booth and a new generation of car comes through and the toll booth says we're also charging the new cars, you can't file a new lawsuit. I think the better analogy is, can defendants say, set up a toll booth in one place and then wait 4 years, set up a new toll booth on a different road 5 miles away, and say no one can ever sue us for anything that happens at this new toll booth, because, hey, 5 years ago and 5 miles across town we had a different one. So I think that the to the extent that there were questions raised about Samsung's injury, Samsung's ability to bring a lawsuit, I think they were pointed, they were well taken, but in our case I think there's even a stronger argument why consumer plaintiffs like ours who suffered no injury whatsoever until they purchased SD cards still have a live claim. What about the State law claims? So I think in this case the district court dismissed the State law claims essentially on the same grounds as the Federal claims, so I think the analysis is very similar. I think with regard to the limitations period, the only thing I would add is that the State law claims we have often have even more generous accrual rules than a Federal antitrust claim would. So, for example, there may be Federal case law that says that you can't take advantage of a delayed discovery rule for a Sherman Act claim in Federal court, while we've pointed out that in a number of the repealer States where we bring claims, you actually can, including California. The California Supreme Court recently issued the ARIA decision that made that exact point. So I think our arguments are only strengthened by the fact that we are asserting damages under State laws of repealer States that have much more generous accrual rules. The district court only ruled on the statute of limitations issue, is that correct? Correct. Okay. All right. Do you want to save the remainder of your time for rebuttal? I would, Your Honor. Thank you. Okay. Good morning. May it please the Court. I'm Chris Hockett. I'll be speaking for the defendants in the Oliver case. This case has some important differences from Samsung, and some of those have been highlighted by opposing counsel's remarks. First of all, there is a reason why the plaintiffs in Oliver are stressing how their case is different from Samsung's. They brought their case later, 8 months later, so 2006 events don't do them any good for purposes of the statute of limitations. That's the reason that they're putting all their eggs in and characterizing their claim as a price-fixing case that began with conduct in 2006, because it's that that they claim makes them eligible for this special accrual rule that allows them to bring a claim based on the time that they made purchases of a price-fixed good. Well, I think it appears to me that what they're suggesting is that you can't immunize yourself from liability by committing, say, an act. It's some long-ago period of time, continuing to, and this is what you, I'm sure, are going to address, continuing to recommit that act or commit new acts, and then say, well, wait a minute, we have absolute time-barred immunity under the Sherman Act because we did something way back in 2003 or 2004 or whenever it happened. And therefore, it doesn't matter whether you've been price-fixed in 2011. Too bad for you. Well, Your Honor, I think there's a difference between the so-called classic price-fixing, which requires ongoing collaboration of the cartel members. Isn't that what they're actually alleging? And that is not what's alleged here, because if I may get to it, what Oliver is alleging is that their, that the district court actually misinterpreted their claim, and in fact that their claim is about a much later price-fixing conspiracy that began in 2006. And with that, they focused exclusively on the fair market price provision, the royalty, minimum royalty provision of the American Crime Act. Okay. But assuming that that is their allegation, and this is a motion to dismiss, don't you have to take those allegations as true? Well, but I think you have to look at, because they have invoked that provision and called it a naked price-fixing agreement that is direct evidence of an agreement to fix prices, you have to look at what it says. And what it says is nothing like that. In fact, it doesn't set any price at all. It doesn't apply to the members of the so-called cartel. It, the agreement itself, and this is before the Court because it was invoked by the complaint, it says that the licensees are free to charge whatever they want for SD cards. That's section 7.2 of the license agreement, excerpts of record, page 21. It obviously doesn't define a price at all, saying that prices have to be, or royalties can be charged on the basis of fair market prices is maybe the opposite of price-fixing. They don't allege in the complaint that a price was ever set by the defendants, ever communicated to anybody. And they admit by invoking Samsung's complaint and incorporating it that the provision was never enforced. So there's no, there's no content to the label that in 2006, the, you know, the Samsung company, the defendants got together and formed a cartel. So they're not eligible for this special rule that they claim that, well, by every purchase that they make, a new statute of limitations starts to run. And they've not been ambiguous about that. So this is what they say in their reply brief. Defendants answering brief, this is page 1, argues for dismissal of a straw man lawsuit that bears little resemblance to the well-pleaded allegations in plaintiff's complaint. Defendants go to great lengths to argue why conduct that occurred in the late 1990s is nearly, nearly, excuse me, neither timely nor actionable, but the conduct alleged in plaintiff's complaint, but that is not the conduct alleged in plaintiff's complaint. Instead, they challenge the unlawful agreement that was made in 2006 to set the fair market price for their own S.D. cards and for their licensee's S.D. cards. Now, in response to your question about the no injury point, let me ask you, so if they had filed sooner, I don't know, what, August, would they have, would they still have a statute of limitations problem? You know, I think that depends on whether there's any content to the claim that something bad happened in 2006. That was discussed in the previous argument. We would argue that 2006 is just a perpetuation of the toll-taking behavior that began in 1999, 2000 and 2003. So it would still be barred, however, even if so, so, so they would have had to file before 2000, August of 2000? They would have had to file in, excuse me, 2010 in order to claim for conduct that is an antitrust violation in 2006. They filed in 2011. So the 2006 events don't do them any good for purposes of awakening a claim. These are consumers, right? So how could they, if they're, the claim is about SD cards. If before 2006, how could they suffer any real injury? Let me address that. I don't understand that. That's a good question. So for an antitrust claim to arise, two things have to happen within the limitations period. First, you have to have forbidden overt acts by the defendants, not just inertial consequences, but forbidden overt acts by the defendants that cause new antitrust injury suffered by the plaintiff. Now, where only one of those things happens within the limitations period, no claim can exist. An exception might be in the case of a fraudulently concealed classic price-fixing conspiracy, but fraudulent concealment facts are not alleged here, and there isn't a price-fixing conspiracy alleged, as I've explained, arising out of the 2006 fair market price provision. So as in this case where the last overt acts of the conspirators are public, outside the limitations period, and the anti-competitive effects got rolling long before the limitations period that applies to the Oliver plaintiffs began, then the plaintiff's claim can't be maintained because of its remoteness from the defendant's conduct. In effect, it's a stillborn claim. It can be seen as outside the statute of limitations or perhaps suffering from a lack of antitrust standing. But to understand why that needs to be so, you have to think about what kinds of new antitrust claims might be asserted out of ancient antitrust violations with allegedly reverberating modern effects. So suppose we were before the Court filing a complaint that on behalf of people who bought gas at Exxon for the last four years, who say that because of standard oils conduct between 1890 and 1911, they obtained a permanent cost advantage that resulted in higher prices to consumers even today. Plaintiffs would say that case doesn't have a statute of limitations problem. Similarly, the AMF case. So AMF was excluded from the market for automobile pollution control. Suppose I represent a class of consumers that says, well, I just bought a Chevy or a Chrysler last week. I paid more for it than I should have because AMF got excluded from the afterburner market in 1965, and I paid more today. According to the plaintiffs, that claim has no statute of limitations problem. Perversely, the later a plaintiff comes along. Scalia, hold on one second, if you will. They're not just simply alleging some long-ago injury. They're alleging a reaffirmation injury, I believe. You're right, but they have to show overt acts by the defendants inside the limitations period that cause them antitrust. I'm still trying to understand. I don't think you've answered my question yet, or at least to help me understand. Suppose they had filed their suit, their lawsuit in late 2009, statute of limitations. I guess I'm concerned about, could they ever allege injury to themselves until they had purchased? What I'm saying, Your Honor, is that there are some claims that never accrue because of untimeliness, because they're traceable to conduct that is by the defendants that is finished a long time ago, not active price-fixing conspiracies, people meeting in coffee shops and deciding what to charge, and then charging that, as Clare contemplated, but rather they establish a patent pool that results in a royalty deed. And suppose there was a really sharp consumer who had this idea, who had some understanding that these new cards were going to be in the offing and sort of jumps the gun, so to speak, and files even before the meeting in Osaka. Same kind of case we have here. Well, how could they ever – I mean, you'd be very upset because they could never be able – they could – all their injury is just speculation, and it's too speculative. Both Samsung and the plaintiffs allege that as of the formation of the patent pool and the royalty licensing system, there was a permanent conflict of interest that was installed in favor of the defendants, and that that is the problem that they're complaining about, okay? Now, if they brought a lawsuit – that's, I think, a fatally flawed claim for reasons that we actually briefed in front of the district court but the district court didn't reach – but if they brought that claim within four years of those events, then it's timely, okay? But if they're bringing a claim now and just labeling it price-fixing in order to take advantage of a more lenient statute of limitations rule, then it doesn't mean that they can maintain that claim if the defendants haven't engaged in any forbidden acts within the limitations period. Otherwise, you're reading the statute of limitations out of existence. And there's no special exception for consumers that allows them to complain about restrictions in the automobile pollution control market in 1965 just because they claim defects in 2013. If that were our system, we would never have the goal of repose that the statute of limitations is designed to achieve. These claims would be able to spring to life forever. And, perversely, the later a plaintiff comes along with a claim like that, a consumer plaintiff, the more insulated he or she would be from any defense that their claim is time-barred, because like the plaintiffs here, they would say, well, how could I have done anything if I wasn't even born in 1911 when the bad conduct took place? So I'm allowed to pursue my claim now. You can't touch me with the statute of limitations. That, we would submit, is a perverse result and not what Congress intended when it adopted statute of limitations in the Clayton Act. So this is not a case, this is not a classic price-fixing case. What the plaintiffs are complaining about is this very old standard-setting conduct. They've attempted, because they're worried about getting their case thrown out because the foundations of it were thrown out by the district court, they've told us that it's a price-fixing case, and it's not, and it should be dismissed. But your motion to dismiss addressed the merits as well, and the district court didn't, didn't really get to the merits. The district court didn't feel that it needed to be dismissed. Whether they stated a claim. That is correct. He just dismissed it on all the claims on statute of limitations grounds. That is correct, Your Honor, yes. And we believe properly so. We should, the district court should be afraid. All right. Thank you. Ms. Bond, you have some rebuttal time. I'd like to start by picking up on one comment that opposing counsel made, which is that admittedly, according to defendant's argument, in this case, plaintiff's claims apparently accrued or never accrued because of untimeliness, that they never would have had a cause of action, period, regardless of when their injury occurred. And that is not the law. The rule that defendants are advocating is essentially a statute of repose. And there are a few statutes like that that say something like you can sue within one year of your injury, but in no event later than three years, or in no event later than four years. I think Section 13 of the Securities Act may be one of them, but that's not this statute. Well, the crux of his argument appears to be, let me use an analogy. Let's assume that in 1965, Nikon, Fuji, Olympus, and other manufacturers got together and started fixing the prices or entered into some kind of a cartel to fix the prices on then existing cameras. And that continued, that was one act, and you walked into the store and you bought, say, a Canon SLR camera today. Their suggestion is, look, whatever happened back in 1962 happened in 1962. You don't get to benefit from that, even though, admittedly, you paid 10 percent more for that camera than you should have otherwise. That's his argument. I agree. And I think that the issue is, in that type of an analysis, the question is, when you paid 10 percent more in 2013, was it plausibly because you allege that the price-fixing conspiracy, while it began in 1965, continued and is continuing to the present? And the prices that you're paying today are because of that continuing anti-price-fixing conspiracy. Do you have any continuing conduct that you allege? Absolutely. So I think that the complaint in this case alleges an overall scheme and conspiracy that defendants entered into with the purpose and effect of allowing them to stabilize prices in the SD card market, prevent their downstream licensees like Samsung from effectively competing on price, such that defendants could, among themselves, charge higher prices without fearing that pricing competition. And moreover, that beginning in 2006, they started imposing an even more onerous royalty provision on their downstream licensees that said, we can collectively determine among ourselves, three horizontal competitors who represent 70 percent of the marketplace, what the fair market price for SD cards is. And if you try to charge less than that fair market price provision, we'll actually sub in what we think that essentially floor price should be and charge the royalty based on that. And our allegation is that the purpose and effect of that royalty provision, which is continuing to be enforced through the present, is to essentially set a floor price, at which point other licensee competitors acting as rational economic actors have no incentive, have no practical, essentially economic interest in charging below what amounts to a floor price. Because if they do, then they know that the cartel will step in and charge what amounts to an even higher royalty, raising their costs even further. So I think the question is really a substantive one. That's the real complaint that defendants are making. And they seem to want to say that this isn't a price fix in conspiracy. But, number one, that's not an issue that was reached by the district court. Number two, reading the complaint in the most light, in the light most favorable to the plaintiffs, we allege that it is, and that the purpose and effect of that agreement was to constrain price and competition, and that they are still acting pursuant to that price-fixing agreement that affects prices in the market for SD cards today. And that's not simply complaining that we purchased SD cards today and those prices are affected by something that happened back in 1999. That's not what we're alleging. We're alleging that the prices we're paying today are essentially a direct effect of the ongoing conspiracy that defendants are engaged in pursuant to the 2006 license that they are continuing to impose on their other licensees. Okay. Okay. Thank you, Your Honors. Do you have any other questions? So thank you very much. Interesting case, well-briefed and well-argued. The matter is submitted, and that ends our session for today. Thank you, everyone.
judges: Ezra, Gould, Paez